## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHEN DISTRICT OF GEORGIA
## ATLANTA DIVISON

**CLEMENT CRADDOCK, Jr.,**

                            **Plaintiff,**          **CIVIL ACTION NO. _____**

**vs.**

**XAVIER BECERRA,**

**IN HIS OFFICIAL CAPACITY AS**

**SECRETARY OF U.S. DEPARTMENT**

**OF HEALTH AND HUMAN SERVICES,**

                **&**

**U.S. DEPARTMENT OF HEALTH**

**AND HUMAN SERVICES,**

            **&**

**SHERRI A. BERGER, MSPH,**

**IN HER OFFICIAL CAPACITY AS**

**ACTING CHIEF OF STAFF**

**U.S. CENTERS FOR DISEASE**

**CONTROL AND PREVENTION**

            **&**

**U.S. CENTERS FOR DISEASE**

**CONTROL AND PREVENTION,**

                    **Defendants**


## COMPLAINT

Plaintiff Clement Craddock, Jr. ("Craddock") files this Complaint against the Center for Disease Control ("CDC").

## PARTIES AND THEIR ROLE IN THIS CASE

1.

Plaintiff Clement Craddock, Jr., ("Craddock") is a natural person and a resident of the State of Georgia.

2.

Craddock was an employee of the Centers for Disease Control and Prevention ("CDC"). During the time period at issue, Craddock worked as a Lead Safety and Occupational Health Manager, GS-0018-14.

3.

Craddock worked with the CDC in its Office of Safety, Security, and Asset Management (OSSAM) in Atlanta, Georgia.

4.

Craddock filed an EEOC complaint alleging that the CDC discriminated against him on the bases of race, sex, religion, color and disability, and that the CDC retaliated against him in connection with his Complaints and in response to his opposition to the CDC's actions against him. Craddock's Complaint was filed May 4, 2018.

5.

The Agency, the CDC, issued a decision on Craddock's claim on April 14, 2020. The bottom line of the decision was that the Agency's investigation of Craddock's allegations found no unlawful discrimination or retaliatory (action) was established.

6.

During the investigation, CDC had employees answer questions based on a standard questionnaire that was very general, and then created "affidavits" based on the responses to the questions, which were basically denials of wrongdoing delivered in a very suggestive format. Craddock was not allowed to obtain discovery during the investigation.

7.

Craddock appealed the April 22, 2020 CDC decision to the EEOC, and the EEOC affirmed the decision of the CDC on April 5, 2021. Craddock requested that the EEOC reconsider the April 5, 2021 decision, and the EEOC denied the request by Decision.

8.

Both the Decision on the Appeal delivered on April 5,2021, and the Decision on Request for Reconsideration were entered by Carlton M. Hadden, Director, Office of Field Operations of the EEOC. It is reported that under Hadden, discrimination by federal agencies is found in less than 3% of cases.

9.

A key driver of the dearth of findings of discrimination in federal agency discrimination cases is that the employee is deprived of the ability to conduct the employee's own investigation and obtain meaningful discovery.

10.

Thus, Craddock files this federal action to obtain de novo consideration of his claims with accompanying discovery.

11.

The Decision on Request for Reconsideration informed Craddock that he has the right to file a civil action in an appropriate United States District Court within 90 calendar days from the date he received the Decision, stating that the presumption was that the decision was received within five (5) calendar days. The Decision further stated that the office of Field Operations in Washington D.C. mailed the Decision to Craddock in Austell, Georgia.   Craddock received the decision at the earliest on Tuesday, April 9, 2021 in light of COVID, which would be the same day that the method of counting time under federal law when the period is less than seven days (excluding Saturdays and Sundays) would conclude the five-day period.

12.

Craddock had 90 days after the date of the receipt of the Decision on Request for Reconsideration to file a civil action such as this one. Based on the earliest correct date of receipt of April 9, 2021, the 90th day thereafter would be Friday, July 9, 2021. Even if the presumption described in the Decision concerning receipt of the Decision on the fifth day after the Decision was mailed, this would make the day of receipt Friday, April 9, 2021. The deadline for Craddock's filing this action is July 8, 2021, and so it is timely.

13.

The Decision on Request for Reconsideration firmly states that Craddock must name as the defendant in the Complaint the person who is the official head of the Agency, the CDC, or the Department head, identifying that person by his or her full name and official title. Craddock has therefore done so in this complaint.

14.

Defendant Secretary Xavier Becerra is the agency head of the U.S. Department of Health and Human Services (HHS) and is sued in his official capacity, and he is subject to the jurisdiction of this Court.

15.

Defendant HHS is an agency of the United States and it is subject to the jurisdiction of this Court.

16.

Defendant Sherri A. Berger, MSPH, is the Acting Chief of Staff for the Centers for Disease Control and Prevention (CDC) and is the agency head responsible for the challenged agency action. She is sued in her official capacity, and she is subject to the jurisdiction of this Court.

17.

Defendant CDC is an agency of the United States located within HHS and headquartered in Atlanta, Georgia, and it is subject to the jurisdiction of this Court.

## JURISDICTION AND VENUE

18.

This Court has federal question jurisdiction pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331 as this matter involves questions arising under the Constitution of the United States and the Administrative Procedure Act.

19.

This Court has the authority to grant declaratory and injunctive relief in this matter pursuant to 28 U.S.C. §§ 2201 and 2202.

20.

Venue for this action properly lies in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because one defendant resides in this judicial district under 28 U.S.C. 1391 (c)(2), and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

21.

Under applicable federal procedure, this action is de novo and Craddock is entitled to discovery as in any other case filed in this Court, and to a decision on the merits of his case from this Court apart from the decision(s) of the EEOC.

**STATEMENT OF FACTS**

22.

Craddock initially complained to the Centers for Disease Control and Prevention, Office of Equal Employment Opportunity on June 20, 2018 and alleged that the CDC discriminated against him based on race, sex, religion, color, disability, age, and reprisal.

23.

Craddock was interviewed March 12, 2018, and contended, beginning in August 2016 and up until his employment ceased, he had been subjected to

discrimination, harassment and retaliation based on his race, disability and prior EEO activity, when the following incidents occurred:

1. On or around August 2016 and continuing Management has not approved or denied his leave requests;

2. On or around January 2017 Management directed he perform office inspections which go against his medical restrictions;

3. On or around October 2017 Management stood over him and pointed their finger at him;

4. On or around October 2017 Management delayed providing him a Reasonable Accommodation;

5. On or around November 2017 Management slammed a door in his face;

6. On or around November 2017 Management directed that he turn in a completed project the day after Thanksgiving;

7. On or around November 9, 2018, Management directed that he was not permitted to use a hearing aid that recorded meetings;

8. On February 5, 2018, he was issued a 2017 PMAP Evaluation that did not accurately reflect his work performance;

9. On February 5, 2018, he learned he would not receive his step increase;

10. On February 16, 2018, Management sent him a threatening email.

1. Craddock stated for approximately one and a half years Ms. Meadows had not approved or denied his requests for leave. He contended because of her negligence he was required to sit with the timekeeper, Julie Gibbs, for five hours and go over all the leave slips that were submitted and not signed by Ms. Meadows. He stated this action on the part of Ms. Meadows has caused him great stress regarding his ability to make plans, in advance. He stated on two separate occasions he had to cancel or reschedule trips which cost him money.

2. Craddock stated in January 2017, Ms. Meadows directed him to conduct safety office inspections. He explained he is the only GS-14 and there are thirteen other persons who can conduct the inspections. Medical documentation, submitted by his doctor, indicated he was not to perform physical activities as such safety office inspections involve very physical activity such as moving equipment, climbing up ladders etc. Craddock added, Crystal Harper, Occupational Safety Manager, a GS-13 and beneath his GS level, was given the responsibility of overseeing the inspections that he conducted.

3. Craddock stated he went into Ms. Meadows' office to go over a project that he was working on. Craddock contended that it was very clear to him that she did not understand the project which led to an expression of disagreement by Ms. Meadows and himself. Craddock explained they continued to conduct the conversation when she jumped up out of her seat standing over him and pointing her finger at him, with a witness observing the incident. Craddock understandably felt threatened by her behavior.

4. Craddock stated he requested a medical Reasonable Accommodation in October 2017, but he did not receive the Reasonable Accommodation until December 2017. Craddock explained he had requested five days of telework and received four days, noting that they originally offered him only three days but after negotiations, settled for four. Waiting two months for one's Reasonable Accommodation to be approved is unacceptable.

5. In November 2017, Craddock requested that a union representative, Cedric Andrews, sit in on a meeting with Ms. Meadows in which she immediately made it known she did not want Mr. Andrews in the meeting in attendance, During this meeting Ms. Meadows had conflict with Mr. Andrews in which her response was to then get out of her chair and walk out of the office. Mr.

Andrews even communicated to Ms. Meadows that she was acting unprofessionally.

6. Craddock stated the day before Thanksgiving in November 2017, Ms. Meadows directed he submit a project the day after Thanksgiving. The assigned project involved placing all the projects that he had worked on for the year into an Excel spread sheet; and exercise that would be very strenuous and time consuming to complete especially considering the Thanksgiving holiday. In addition, the Secretary of Health and Human Services sent out an email to all employees stating that all employees had the remainder of the day off and were being released of their duties three hours early. Craddock sent an email to Pam Gilbertz, his union representative, asking her to intercede.

7. Craddock stated he was issued an $8000.00 hearing aid by the Veterans Administration. The hearing aid links to his phone and records everything said in meetings. Craddock explained to Ms. Meadows that his hearing aid was a part of his Reasonable Accommodation request in which Ms. Meadows informed Craddock that he was not permitted to use the hearing aid in meetings as it would be uncomfortable for the other meeting participants.

8.  Craddock stated on February 5, 2018, he received his 2017 PMAP evaluation; a score of 2.8 and when he should have received a 4.5. Craddock received a score of 2 on one of the elements involving the National Safety Council a score of which was not accurate has Craddock had accomplished all that was specified in his plan for 2017.

9.  Craddock stated on February 5, 2018, he was informed he would not be receiving his step increase at a time where he should have gone from a 7 to an 8, effective March 1, 2018. The  step increase is a service step increase that is given after a certain number of years of service not based on performance and should have had nothing to do with his PMAP evaluation.

10. Craddock stated on February 16, 2018, he received a threatening email from Ms. Meadows. An email so threatening, it caused him to go into the hospital at 2 a.m. on February 17, 2018.

24.

The CDC had previously made a specific decision to demote Craddock and to accuse him in connection with the demotion of not performing duties which had been assigned, not having people to supervise to "justify" his supervisory

designation, and not being charged with "emergency response coordination" in fact, although that was one of his designated duties. This along with the threat and the unjustified performance plans, issues about his step pay increase, slammed doors in his face, intentionally inconvenient assignments around holidays such as Thanksgiving, intentionally disregarding Craddock's requests for leave, intentionally assigning work to Craddock not appropriate for a GS-14, that could have been performed by other available employees with the appropriate, much lower grade, and cooking up unnecessary spats regarding Craddock's work and use of leave time  put Craddock in a position where he first had to take FMLA leave and eventually believed he was going to have to retire to avoid being fired.

25.

The CDC has tried to justify its treatment of Craddock by saying his whole group of employees were being funneled into a new branch, what would become the Quality and Compliance Branch. Were that the case, given Craddock's seniority and GS-14 ranking, he should have been allowed to compete for the management position over the new branch. However, when Craddock raised this very point with Carroll, this was the point at which Carroll, who had not even had the courtesy of introducing the heir apparent to his GS-14, delivered his threat, and

then thereafter retaliated against Craddock, with the transfer, the no office, the no legally required reasonable accommodations, etc.

26

The CDC had the option to as a part of the reorganization they claimed they were effectuating of giving Craddock staff to supervise. However, the CDC was antagonistic to black men, particularly more experienced black men like Mr. Craddock, actually performing in a supervisory role. So, the choice for the new Quality and Compliance Branch was a white woman.

27.

The CDC chose the path of belittling and denigrating Craddock's service to the agency, and of exposing him to the later charge that he was not really acting as a supervisor, by removing employees from his supervision, trying to bring their claim into a position of truth to put Craddock in subordinate place.

28.

The CDC also intentionally changed its prior practices of how emergency response coordination was carried out. In the past, Craddock was directly and heavily involved in the emergency response coordination effort, even traveling

internationally several times as part of that effort and supervising a team of employees as part of that effort.

29.

The CDC made choices repeatedly to deprive Craddock of staff to supervise, emergencies to respond to, and duties to perform, and actively hired other employees, white men and women, for the specific purpose of encroaching on or completing divesting him of the functions he had previously served the CDC.

30.

The CDC marginalized Craddock for the specific purpose of justifying the hidden fait accompli it was planning, that Craddock would be forced to retire.

31.

The CDC discriminated against Craddock because of his race, his age, his sex, and his disability, in effect castrating him, and leaving him impotent in the organization, to accomplish its goal to force Craddock to retire--- for the purpose of replacing him with someone of the age, sex, race, and non-disabled status required.

31.

The CDC accomplished the fait accompli and Craddock did retire, being constructively discharged,

34.

The CDC did not provide legitimate non-discriminatory reasons for its actions against Craddock, and the CDC when it considered the claim through the ALJ did not even require that the individual employees of EEOC who were discriminating against Craddock provide evidence that was subject to cross examination, so that their purported non-discriminatory reasons for Craddock's treatment were tested. Instead, sua sponte the ALJ announced that the ALJ would rule on summary judgment.

35.

Instead, the CDC and later the EEOC decisions simply recited that non-discriminatory reasons had "been asserted" or had been articulated. But no inquiry was made as to whether the reasons were a pretext.

36.

Faced with an intolerable and unsustainable situation, Craddock had tried to advocate for himself to the CDC, pleading with the CDC to provide just the required accommodations CDC had already recognized it was required to provide

given Craddock's physical and mental state. The CDC, in violation of the law, unilaterally decreed that the CDC would not provide the legally required accommodations to Craddock, and the CDC retaliated against him for insisting they be provided.

37.

Craddock had been a reliable performer with much more of a historical personal stake in the CDC than the more recent interlopers who went on a witch hunt against him.  Even as a worker with multiple disabilities, Craddock performed at a high level  as long as he was receiving the legally required accommodations so that he could perform the essential functions of his job. Craddock was discriminated against by Defendants—because of his disabilities, in violation of the Americans With Disabilities Act.

38.

The CDC acted with specific intent to harm Craddock, by denying him the reasonable accommodations he was entitled to in his job, by publicly shaming him as a black man when they wanted him out, and by retaliating against Craddock when they decided they did not want to bother with providing the legally required accommodations, regardless of his protestations.

## COUNT ONE: VIOLATIONS OF TITLE VII: 42 U.S.C. 2000e

39.

Bostock v. Clayton County makes the question of whether Title VII is

violated very easy. Would the decision have been different had Craddock been

other than black? The obvious answer to this question is of course.

40.

Bostock v. Clayton County is focused totally on the complaining

individual—in relation to the individual Plaintiff's claim of discrimination, his

membership in the protected class such as race, or color, or sex only has to be a

motivating factor for the adverse employment decision (lower standard); or a "but

for" cause of the adverse employment action (higher standard)-- in order to be

actionable as a Title VII violation.

41.

As to Craddock, the CDC's decisions had as a but for factor his race, color

and sex. He was discriminated against in favor of white people, and women. He

was displaced by white women and white men, and actually was not even

considered as a possible manager over the new the Quality and Compliance Branch.

42.

Craddock did not retire voluntarily but instead was constructively discharged.

43.

Accordingly, Craddock is entitled to all the relief Title VII provides to him against the CDC.

## COUNT TWO: VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

44.

Again, as provided in <u>Bostock,</u> a motivating factor for, if not a but for cause of, the adverse employment actions Craddock suffered was his age, as he was in the protected class under the ADEA being over 40. People under 40 were favored over Craddock because they were younger, and therefore Craddock is entitled to all the relief the ADEA provides to him against the CDC.

## **COUNT THREE : VIOLATIONS OF THE AMERICANS WITH DISABILITIES  ACT**

45.

Again, as provided in <u>Bostock,</u> a motivating factor for, if not a but for cause of, the adverse employment actions Craddock suffered was his numerous disabilities which the CDC was already obligated to provide accommodations for.

46.

Craddock was in the protected class under the ADA being disabled and entitled to reasonable accommodations. People not disabled were favored over Craddock because they did not require reasonable accommodations, and therefore Craddock is entitled to all the relief the ADA provides to him against the CDC.

## COUNT FOUR: VIOLATION OF FREE SPEECH RIGHTS

47.

Craddock received adverse employment actions because he spoke out against the racism, sexism, ageism and disability discrimination practiced by the CDC generally—apart from his own victimhood.

48.

The CDC violated 42 USC 1981, 1983 and Plaintiff's First Amendment Rights under the U.S Constitution, in so doing, entitling Craddock to damages.

## COUNT FIVE —ATTORNEYS'FEES AND PUNITIVE DAMAGES

### 49.

The CDC's actions showed an entire want of care amounting to a conscious of indifference to the consequences of their actions, and/or were willful and wanton, and/or were motivated by malice, and/or showed a specific intent to harm Craddock.

### 50.

Therefore, the CDC is liable to Craddock for punitive damages in an amount to be determined in the enlightened conscience of the jury in an amount of at least $250,000.

### 51.

Craddock is also entitled to attorneys' fees under the statutes cited above.

WHEREFORE, Craddock prays that the court grant him a judgment against Defendants including various components as follows:

l.  A judgment for Craddock against CDC for back pay from the date of his resignation until judgment is entered against CDC on this claim, in an amount to be proven at trial, plus front pay as appropriate, or reinstatement as appropriate.

2.An order providing additional remedies to Craddock such as provision of the value of health insurance benefits, vacation pay, paid time off, retirement or pension benefits, and other relief as the Court deems proper.

3. A judgment for Craddock against CDC for reasonable attorneys' fees to be be determined under applicable procedure;

4.A judgment in favor of Craddock for punitive damages against the CDC because of their willful and wanton conduct, malice and their conscious indifference to the consequences of their actions, up to the cap of $ 250,000, or if the jury finds that the CDC acted with specific intent to harm Craddock, so that punitive damages are uncapped, in an amount to be determined pursuant to applicable procedure.

5.Such other and further relief as the Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 7th day of July, 2021.

**DALZIEL LAW FIRM**

s/ *Charles M. Dalziel, Jr.*

Charles M. Dalziel, Jr.

Georgia Bar No. 203730

31 Atlanta Street Suite 200

Marietta GA 30060

(404) 735-0438

chuck@dallziellawfirm.com

Attorney for Plaintiff